# EXHIBIT 1

**21SL-CC00108**

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| MELISSA BOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: |
| | ) | |
| SAKS FIFTH AVENUE, LLC | ) | Division No.: |
| | ) | |
| Serve at: | ) | |
| CSC-Lawyers Incorporating Serv. Co. | ) | |
| 221 Bolivar Street | ) | |
| Jefferson City, MO 65101 | ) | |
| | ) | |
| Defendants. | ) | |

## PETITION FOR UNPAID COMMISSIONS

COMES NOW Plaintiff Melissa Bock ("Plaintiff" or "Bock"), by and through undersigned counsel, and for her Petition for Unpaid Commissions ("Petition") against Defendant Saks Fifth Avenue, LLC ("Defendant"), states as follows:

### NATURE OF THE CASE

1.    Plaintiff Bock was employed at the Saks Fifth Avenue retail store located at 1 Plaza Frontenac, St. Louis, MO 63131 ("Frontenac Store"), engaged to sell and manage the marketing and sale of jewelry to consumers on behalf of the brand from October 2010 until her termination, effective January 15, 2018.

2.    Defendant Saks Fifth Avenue, LLC is a foreign corporation registered to do business in Missouri and at all times relevant conducted business in the County of St. Louis, Missouri at the Frontenac Store, part of the Saks Fifth Avenue chain of luxury department stores owned and operated as subsidiary division of Saks Incorporated and Hudson's Bay Company, and engaged in the retail sale of high-end and designer products including, *inter alia,* fine jewelry.

1

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

3.      Defendant's business employed and contracted with sales representatives such as Bock to solicit orders in exchange for compensation. Part of the pay accruing to sales representatives to incentivize soliciting orders was expressed as a specified amount or a percentage of the dollar amount of orders or sales based on mathematical formulae, *i.e.* compensation on a commission-basis.

4.      Bock has worked in jewelry sales throughout her professional life, and it is industry standard in jewelry sales to compensate employees of luxury department stores selling fine jewelry, in whole or in part, on a commission basis, with a fixed percentage of sales made to incentivize such sales.

5.      Defendant paid Bock on a semimonthly basis. Defendant compensated Bock, in whole or in part, on a commission basis for the sale of jewelry, but failed to pay the commissions portions of her compensation monthly. Nevertheless, both Bock and Defendant tracked and documented this as an expected element of her compensation.

6.      As a corporate business entity doing business in this state, under Section 290.080, RSMo, Defendant's business enterprise, collectively or individually, was required by law to pay the wages and salaries of their employees as often as semimonthly, and the salaries or commissions of their executive, administrative, and professional employees and/or sales people and other employees compensated in whole or in part on a commission basis monthly.

7.      Defendant unlawfully withheld promised and earned commissions and unlawfully profited from withholding such commissions from Bock for sales Plaintiff was incentivized to make on Defendant's behalf induced by and in reliance on promise of commission, and terminated her employment prior to payment of commissions for orders and sales made in the Fall 2017 season under the Commission Plan.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

8.     Bock brings this lawsuit as a claim under the Missouri Commission Sales Act, § 407.911 *et seq*, RSMo. and related statutory provisions and Missouri common law, seeking both a declaration of her right to recover unpaid commissions due, owing, and unpaid and to recover such commissions.

9.     As a person, firm or corporation doing business in this state, under 290.110, RSMo, upon Defendant's discharge of Plaintiff, with or without cause, or refusal to further employ her, her unpaid wages then earned at the contract rate, without abatement or deduction, became due and payable

**PARTIES AND JURISDICTION**

10.     Plaintiff Melissa Bock is a resident of St. Louis County, Missouri who performed work for Defendants in sales in the jewelry department of the Saks Fifth Avenue retail store located at 1 Plaza Frontenac, St. Louis, MO 63131.

11.     Upon information and belief, Defendant Saks Fifth Avenue, LLC is a foreign limited liability company, and together with Saks Incorporated are wholly-owned subsidiaries or divisions of Hudson's Bay Corporation, together owning and operating the Saks Fifth Avenue retail store located at 1 Plaza Frontenac, St. Louis, MO 63131 ("Frontenac Store").

12.     To operate the Frontenac Store, at all times relevant, Defendant as - by joint and collective policy, practice, and procedure of the business enterprise - entered into or executed employment agreements or arrangements in the State of Missouri with Missouri residents, suffering and permitting them to perform work at and staff the Frontenac Store in Missouri, and compensating such Missouri employees for such work.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

13.     At all times relevant, Defendant's business enterprise has acted directly or indirectly in the interests of an employer towards these Missouri employees, such that the termination letter directed to Melissa Bock appeared on HBC letterhead.

14.     Defendant's business enterprise maintained personnel records related to Bock's employment, including her personal information, work activities, the terms and conditions of her employment, its own policies applicable to her work, her compensation history, and records of sales and orders upon which she expected to be paid commission.

15.     As employers doing business in the state of Missouri and operating directly or indirectly in the interests of an employer towards Missouri employees, Defendant's business enterprise was subject to the recordkeeping provisions of applicable wage and hour laws, and required to maintain and preserve true and accurate records of the persons employed such as Bock, including *inter alia*, her wages and hours paid each pay period, day, workweek, and other conditions and practices of employment. *See* § 290.520 RSMo; *see also* 29 U.S.C. § 211(c); 29 C.F.R. § 516.

16.     The unlawful employment policies, procedures, and ultimately practices of Defendant's business enterprise complained of herein occurred in St. Louis County, Missouri; therefore, jurisdiction and venue are proper in this Court.

17.     This Court has jurisdiction over the subject matter of this action pursuant to § 478.070, RSMo, as this is an original civil action seeking monetary damages for causes of action accruing in the State of Missouri.

18.     Venue is proper in this Court pursuant to § 508.010, RSMo., as the acts, occurrences, and events alleged in this action took place, in whole or in part, in St. Louis County, Missouri.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

19.     From her hire in October 2010 to her termination effective January 15, 2018, Plaintiff was employed at the Saks Fifth Avenue-branded Frontenac Store as a sales manager for the retail sale of jewelry in exchange for salary and incentivized via commissions based on set mathematical formulae to directly and indirectly solicit and manage orders and sales of Defendant's retail jewelry.

20.     Defendant structured Plaintiff's compensation in part on a salary basis paid semimonthly, in addition to what it labeled as a "bonus" paid seasonally which, according to internal documents, was in actuality acknowledged, intended, and mutually understood to be a commission-basis (hereinafter, "Commission Plan") Upon information and belief, attached here-to as Exhibit A are historic descriptions of the Commission Plan structure for Sales Managers working in the Jewelry Department.

21.     In Fall 2017, Defendant continued this commission program and offered to their sales managers, including Plaintiff, the routine seasonal Jewelry Selling Manager Seasonal Incentive Program similar to those identified in Exhibit A, i.e. the Commission Plan. Plaintiff and other selling managers thereafter redevoted and recontinued their efforts to soliciting and making sales and orders to obtain such promised wage compensation.

22.     In 2018, Defendant's business enterprise paid only $2,600.74 in wages, tips, and other compensation to Bock.

23.     At the time of her termination, Bock estimates under the Compensation Plan for Fall 2017, Defendant owed her at minimum $22,670 for completed commission-based sales on fine jewelry attributable to her work performed in workweeks subsequent to Defendant beginning the Fall 2017 Seasonal Incentive Program and prior to her termination.

5

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

24.     Sections 407.912 and 407.913, RSMo, together specify that whenever a contract is terminated, by a principal or by a sales representative, voluntarily or involuntarily, all earned commissions must be paid within 30 days. In conjunction with Section 290.080, RSMo, these statutory provisions embody a strong public policy in the state of Missouri which prohibits conditioning the payment of commissions on active employment at time of payment; to hold otherwise would incentivize employers to profit and be unjustly enriched by promising commissions to incentivize sales and then terminate sales representatives in bad faith breach of such promises to avoid payment of such commissions.

25.     Upon information and belief, Defendant knowingly sought to include a void clause in the implied or express contract conditioning payment of commissions on Plaintiff being actively employed on the date payments were expected to be made, approximately 60 days after the season end, and sought to terminate her employment in bad faith to avoid such payments. Defendant's business enterprise has previously attempted to withhold earned commissions from Bock when she lived and worked in the State of California, refusing to pay her earned commissions unless she pursued legal process, rendering Defendant's current actions knowing, willful, and flagrant disregard for Bock's rights under Missouri law.

26.     The net effect of the policies, practices, and procedures maintained and administered by Defendant, and instituted and approved by Defendant's management, is that Defendant willfully failed to pay commissions that are due or owed Plaintiff. Defendant thus enjoyed ill-gained profits at the expense of Plaintiff.

## COUNT I
## Violations of the Missouri Unpaid Commissions Act, § 407.911 *et seq*., RSMo

27.     Plaintiff incorporates all preceding paragraphs by reference as if fully stated herein.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

28.     Plaintiff was employed in the Frontenac Store by Defendant and/or its business enterprise.

29.     Defendant and/or its business enterprise was, individually or collectively, a "Principal" under Section 407.911(2), RSMo, in that Defendant:

    a.  was a business entity importing, providing, or distributing jewelry for retail sale at the Frontenac Store;

    b.  had an agreement, express or implied, to employ sales representatives to solicit orders for the jewelry in exchange for compensation; and

    c.  agreed to compensate such sales representatives, in whole or in part, on a "Commission Plan," upon a rate expressed as a percentage of dollar amount of orders or sales or specified amount per order or per sale.

30.     While employed by Defendant's business enterprise, Plaintiff was a "sales representative" within the meaning of § 407.911(3), RSMo, in that, Plaintiff and Defendant had an agreement, express or implied, (hereinafter, "Commission Plan") whereby Defendant employed Plaintiff and agreed to compensate Plaintiff for such employment based, in whole or in part, on a designated percentage or specified amount per order or sale of the amount of money collected on sales of Jewelry in the Frontenac Store.

31.     The relationship between Plaintiff and Defendant ended effective January 15, 2018 and her last day of work was January 11, 2018.

32.     Under Section 290.080, RSMo, Missouri law requires the payment of salespeople and other employees compensated in whole or in part on a commission basis of their salaries or commissions on a monthly basis.

33.     Under Section 407.912, RSMo, all commissions owed to Plaintiff were required to be paid upon becoming due, but have not been paid by Defendant to date, or within a month of becoming due.

34.     As a result of Defendant's failure to timely pay the commissions owed to Plaintiff, and its decision to withhold these commissions to Plaintiff, Defendant has violated and continues to violate Missouri law, acting in bad faith.

35.     Defendant has acknowledged it is subject to state wage and hour laws and obligated to adhere to such laws, and has failed to timely pay Plaintiff all commissions earned while in Defendant's employ.

36.     Under Section 407.913, any principal who fails to timely pay the sales representative commissions earned by such sales representative shall be liable to the sales representative in a civil action for the actual damages sustained by the sales representative and an additional amount as if the sales representative were still earning commissions calculated on an annualized pro rata basis from the date of termination to the date of payment.

37.     Upon information and belief, Plaintiff estimates Defendant's records will reflect she has been damaged through unpaid commissions in excess of approximately $22,670.

38.     Because this sum remains unpaid, Plaintiff is entitled to an additional calculated on an annualized pro rata basis from the date of termination to the date of payment.

39.     As a result of Defendant's violation of § 407.913, RSMo, Plaintiff is entitled to recover her reasonable attorneys' fees and costs.

WHEREFORE on Count I of this Petition, Plaintiff demands judgment against Defendants and prays for (1) an Order declaring Plaintiff's rights under the Commission Plan under Missouri law to earned and unpaid commission-based compensation; (2) an award of her earned but unpaid

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

commissions, in amounts to be determined at trial; (3) an additional amount to be determined at trial as if she were still earning commissions calculated on an annualized pro rata basis from the date of termination to the date of payment; (4) attorneys' fees, costs, and expenses; (5) pre-judgment and post-judgment interest as provided by law; and (6) such other relief as the Court deems fair and equitable.

**COUNT II – MISSOURI CONTRACT CLAIMS**

40.     Plaintiff incorporates all preceding paragraphs by reference as if fully stated here-in.

41.     At-will employment provides a legally enforceable promise, express or implied, to pay the employee for the work performed by the employee. *Morrow v. Hallmark,* 273 S.W.3d 15, 28 (Mo. App. W.D. 2008).

42.     Defendant contracted with Plaintiff, express or implied, under which Plaintiff agreed to perform services as part of her employment with Defendant, and Defendant agreed to compensate Plaintiff by paying her commissions, calculable by formula, according to a certain schedule.

43.     Defendant routinely demanded signature upon documents prepared by it to memorialize its offers, and Plaintiff commenced performance on the contract immediately, devoting her efforts towards earning commissions under the Commission Plan to be paid for the Fall 2017 season upon the formulae contained there-in.

44.     Defendant breached this express or implied contract by its course of conduct explained above. Defendant's breach was willful and not the result of mistake or inadvertence.

45.     Defendant breached and violated the Commission Plan by failing to pay plaintiff the commissions she had earned. Specifically, on or about January 15, 2018, Plaintiff had earned

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

commissions in the approximate amount of $22,670 based on her information and belief, yet Defendant failed to pay said commissions to Plaintiff. The exact amount of commissions due and owing to Plaintiff are calculable from sales orders and records in Defendant's possession, tracked and maintained by Defendant for the purpose of calculating payments owed to its sales representatives under the Commission Plan.

46.     Defendant has breached and continues to breach and violate the Commission Agreement by failing to pay Plaintiff the monthly commissions she has earned from sales made prior to Defendant's termination of the relationship with Plaintiff.

47.     Under Section 527.010, the Circuit Courts of this state have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.

48.     Plaintiff is a person interested under written contract or other writing constituting a contract and/or whose rights are affected by statute or contract, entitled to have determined the construction or validity of such rights under the legal relationship related to the promised commissions.

49.     As a direct result of Defendant's unlawful conduct, Plaintiff has suffered a loss of these commissions.

50.     Prior to Defendant's breach and violation of the Commission Plan, Plaintiff performed her duties under the Commission Agreement.

51.     As a direct result of Defendant's violation and breach of the Commission Agreement, as aforesaid, Plaintiff seeks adjudication and declaration of her rights and compensation for her damages.

52.     Plaintiff is entitled to damages equal to her unpaid commissions under common law and such further relief as is appropriate under Section 527.080, RSMo.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

53.     Plaintiff is entitled to attorney's fees and costs under Sections 527.080 and 527.100 for Defendant requiring her to seek adjudication of her statutory, contractual, and common law rights stemming from her employment relationship as a salesperson in the interests of equity and justice.

54.     Plaintiff is entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

WHEREFORE on Count II of this Petition, Plaintiff demands judgment against Defendant and prays for (1) declaratory judgment of her rights and legal relationship to Defendant relative to the documents evidencing a contractual relationship between a salesperson and principal for payment of commissions; (2) all earned but unpaid commissions as damages; (3) pre-judgment and post-judgment interest; and (4) such other relief as the Court deems fair and equitable.

### COUNT III – Quantum Meruit

55.     Plaintiff incorporates all preceding paragraphs by reference as if fully stated herein.

56.     Plaintiff conferred a benefit upon Defendant by working on Defendant's behalf without the commissions she was promised and due.

57.     Defendant had an appreciation or knowledge of the benefit conferred by Plaintiff.

58.     Defendant accepted and retained the benefit under such circumstances as to make it inequitable for Defendant to retain the benefit of her incentivized sales efforts without payment of its acknowledged value.

59.     As a direct result of Defendant's failure to pay Plaintiff her the promised commissions, Plaintiff has been damaged.

60.     Plaintiff is entitled to damages equal to the unpaid commissions

11

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

WHEREFORE on Count III of this Petition, Plaintiff demands judgment against Defendant and prays for: (1) the reasonable value of her services rendered, accepted, demanded, and unpaid equal to the sum of her unpaid commissions; (2) prejudgment and post judgment interest at the applicable legal rate; and (3) such other relief as the Court deems fair and equitable.

### COUNT IV – PROMISSORY ESTOPPEL

61.     Plaintiff incorporates all preceding paragraphs by reference as if fully stated herein.

62.     Defendant reasonably expected to induce Plaintiff, and did induce Plaintiff to rely on Defendant's promises relating to the payment of commissions.

63.     Plaintiff reasonably relied on Defendant's promises.

64.     Plaintiff relied to her detriment on promises and representations made to her by Defendants regarding the payment of commissions.

65.     Defendant refused to honor its promises to Plaintiff. Defendant's refusal was willful and not the result of mistake or inadvertence.

66.     As a direct result of Defendant's unlawful conduct, Plaintiff has suffered a loss in an amount equal to the amount of unpaid commissions promised and retained by Defendants.

67.     As a direct result of Defendant's failure to pay Plaintiff her commissions, Plaintiff has been damaged.

68.     Plaintiff is entitled to damages equal to the unpaid promised commissions.

69.     Plaintiff is entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

WHEREFORE on Count IV of this Petition, Plaintiff demand judgment against Defendant and prays for: (1) a sum equal to her unpaid commissions; (2) pre-judgment and post-judgment interest as provided by law; and (3) such other relief as the Court deems fair and equitable.

## COUNT V – UNJUST ENRICHMENT

70.     Plaintiff incorporates all preceding paragraphs by reference as if fully stated herein.

71.     In failing to compensate Plaintiff with the commissions for sales made she worked towards, Defendant has obtained substantial benefits and has been unjustly enriched.

72.     Defendant's conduct was willful, in bad faith, and not the result of mistake or inadvertence.

73.     It would be inequitable for Defendant to retain the benefits received.

74.     As a direct result of Defendant's unlawful conduct, Plaintiff was incentivized to devote significant energy, resources, and good will to solicit sales and orders for Defendant and denied the promised compensation

75.     Plaintiff is entitled to damages equal to the value of the retained benefit, *i.e.* the promised and denied sum of unpaid commissions.

76.     Plaintiff is entitled to pre-judgment and post-judgment interest as the applicable legal rate.

WHEREFORE on Count V of this Petition, Plaintiff demands judgment against Defendants and prays for: (1) a sum equal to the value of the retained benefit; (2) prejudgment and postjudgment interest as provided by law; and (3) such other relief as the Court deems fair and equitable

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**COUNT VI - FAILURE TO TIMELY REMIT EARNED WAGES AT TERMINATION**

77.     Plaintiff incorporates all preceding paragraphs by reference as if fully stated here-in

78.     Defendants, collectively and individually, are a person, firm, or corporation doing business in this state as defined by § 290.110, RSMo.

79.     Section 290.110, RSMo provides for the payment of final wages, without abatement or deduction, on the date of discharge upon written request of an employee.

80.     Defendants discharged and refused to further employ Plaintiff on or about January 15, 2018.

81.     Defendants had employees subject to the Fair Labor Standards Act and were under a duty to maintain accurate records of wages and hours of employees on a workweek-by-workweek basis including records identifying the basis on which wages were paid and total remuneration for employment for each pay period, including commissions. *See* 29 U.S.C. § 211(c); *see also* 29 C.F.R. § 516.

82.     Employers are required by law to maintain true, accurate, and contemporaneous records on a workweek basis of the claimed exemptions from the MMWL and Fair Labor Standards Act. Upon information and belief, in the workweeks in question, Defendants classified Bock as exempt in January 2018 under both the inside sales exemption, Section 7(i) and bona-fide executive, administrative, or professional under the highly compensated employee exemption.

83.     When an employee denoted exempt under the highly compensated employee exemption is discharged before the end of the year, the exemption is only available if the employee receives a *pro rata* portion of the required annual compensation within one month after the end of employment.

14

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

84.     Missouri law requires payment of commissions on a monthly basis. Such unpaid commissions attributable to each workweek are part of the wage rate.

85.     As a matter of basic mathematics, to qualify for any claimed highly compensated employee exemption, Defendants would had have to have paid to Plaintiff no less than $3846.15 in 2018. Plaintiff only received $2,600.74 in compensation in 2018.

86.     No later than January 15, 2018, the unpaid wages of Plaintiff, totaling a minimum in unpaid commissions then earned, and at a rate calculated *pro rata* of the minimum, without abatement or deduction, became due and payable.

87.     In addition, Plaintiff seeks declaration of her rights under this statute pursuant to 527.020, RSMo, and in this Court's discretion, such further relief as necessary or proper under Section 527.080, RSMo.

WHEREFORE on Count VI of this Petition, Plaintiff demand judgment against Defendant and prays for: (1) an Order finding Defendants claimed the Highly Compensated Employee exemption for the first two workweeks of January 2018, establishing a minimum rate of pay of $3,846.15 per workweek; (2) an Order finding the commissions promised under the Commission Plan were wages due and owing under Section 290.080 and Section 290.111, RSMo, and have been unlawfully held by Defendants at the Frontenac Store; (3) an Order finding the date on which Plaintiff first requested in writing her final wages; (4) an order requiring payment of such funds and as penalty for such unpaid wages, a sum of sixty (60) days of wages, eight (8) hours per day, totaling four hundred eighty (480) hours, at a wage rate no less than the approximate $48-per-hour rate of a highly compensated employee; and (5) such other relief as the Court deems fair and equitable.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury, in the Circuit Court of St. Louis County, Missouri, on all issues in this case which are so triable.

Respectfully Submitted,

/s/ *Jason M. Finkes*
Jason M. Finkes, #65903MO
LAW OFFICES OF JASON M. FINKES, LLC
8112 Maryland Ave, Suite 400
Clayton, MO 63105
Telephone: (314) 312-3437
Email: Jason@FinkesLegal.com

*Attorney for Plaintiff Melissa Bock*

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM



## 2010 JEWELRY DM SEASONAL INCENTIVE PROGRAM – PLAN DOCUMENT

### Objective:
The role of the Jewelry Department Manager differs from the role of the other Department Managers in the store. The Jewelry Department Managers have significant input into the selection and control of their inventory, as well as greater control over the pricing of their sales. Therefore, the Jewelry Department Managers Incentive Program was developed to drive sales and markdown rate performance.

### Eligibility:
All Jewelry Department Managers will be included in the program.

### Performance Metrics:
- Sales plan - for all groups managed by the DM (some combination of 13/18/55, dependant on what exists in each store). Sales Plan goal is the seasonal stretch goal.
- Markdown Rate - targets are based on POS rates, not on full markdown rate, for all areas under the DMs control.

### Minimum Performance Requirement for Payout:
In order to achieve any bonus payout under the Jewelry DM Seasonal Bonus Plan the Jewelry DM must meet at least 70% seasonal stretch sales goal.

### Bonus Payout Opportunity:

| Markdown Achievement | Sales - Plan | Sales - Over Plan |
|---|---|---|
| Achieve less than 90% of Target Markdown | 1.50% | 2.00% |
| Achieve between 90% - 125% Target Markdown Rate | 1.00% | 1.50% |
| Achieve greater than 125% of Target Markdown Rate | 0.00% | 0.00% |

### Sales Modifier:

- If 70% of sales plan is achieved, 25% of payout is earned
- If 80% of sales plan is achieved, 50% of payout is earned
- If 90% of sales plan is achieved, 75% of payout is earned
- If 100% or greater of sales plan is achieved, 100% of payout is earned

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

## Calculation Examples:

Examples at 90% of Sales Plan

| Targets/Achievement Data | |
|---|---|
| Seasonal Sales Plan | $1,000,000 |
| Actual Sales | $900,000 |
| Achievement Level | 90% |
| Target Markdown Rate | 18% |

| Bonus Calculation Examples | Sales Plan | Sales Modifier | Total Payout |
|---|---|---|---|
| Markdown Rate Achievement = 16% (89% of Target) | $13,500 | 75% | $10,125 |
| Calculation | (900,000*1.5%) | | ($13,500 * 75%) |
| Markdown Rate Achievement = 19% (106% of Target) | $9,000 | 75% | $6,750 |
| Calculation | (900,000*1.0%) | | ($4,500 * 75%) |
| Markdown Rate Achievement = 23% (128% of Target) | $0 | 0% | $0 |

Examples exceeding Sales Plan

| Targets/Achievement Data | |
|---|---|
| Seasonal Sales Plan | $1,000,000 |
| Seasonal Sales Over Plan | $350,000 |
| Target Markdown Rate | 18% |

| Bonus Calculation Examples | Sales Plan | Sales Over Plan | Total Payout |
|---|---|---|---|
| Markdown Rate Achievement = 16% (89% of Target) | $15,000 | $7,000 | $22,000 |
| Calculation | (1,000,000*1.5%) | ($350,000*2.0%) | ($15,000+$7,000) |
| Markdown Rate Achievement = 19% (106% of Target) | $10,000 | $5,250 | $15,250 |
| Calculation | (1,000,000*1.0%) | ($350,000*1.5%) | ($10,000+$5,250) |
| Markdown Rate Achievement = 23% (128% of Target) | $0 | $0 | $0 |

## Payout Administration:

- Bonuses will be paid out after the close of the season.
- All plan participants must be employed and in good standing ("At Target" or above rating on their review) with Saks Fifth Avenue on the date of the bonus payment to receive their award.
- If a plan participant leaves Saks Fifth Avenue prior to payment of any potential award, that award is forfeited.
- A Jewelry DM who has been hired after a new season begins may be eligible for a prorated award based on the entire seasonal performance (not monthly performance).  The same pro-ration guidelines are used for transfers based on store performance.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

- Saks Fifth Avenue reserves the right to change or amend bonus programs as business needs dictate.  The company will make every effort to provide as much notice as possible when such occasions arise.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**Seasonal Incentive Compensation Plan FY 2010**

**Jewelry Manager**
**Acknowledgment Form**

I acknowledge that I have received, reviewed, and agreed to the terms and provisions of the Jewelry DM Seasonal Incentive Plan, including the Administrative Guidelines of the Incentive Compensation Plan.  I understand that this Incentive Compensation Plan is not intended to create a guarantee or contract for employment between Saks Fifth Avenue and me.   I further understand that the provisions and payouts of the Incentive Compensation Plan may be modified, amended, withdrawn, or otherwise changed by Saks Fifth Avenue at any time.

_____
Signature

_____
Printed Name

_____
Date

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**Seasonal Incentive Compensation Plan FY 2010**

**Jewelry Manager**
**FY 2010 Plan Assignment Sheet - Fall Season**

I acknowledge that I have received, reviewed, and agreed to the 2010 Fall Merchandise Sales and Markdown Rate Plans.  I understand that the Plans may be modified or otherwise changed by Saks Fifth Avenue at any time.

**Fall Season Merchandise Sales Plan**

**Fall Season Markdown Rate Plan**

_____
Signature

_____
Printed Name

_____
Date

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM



## 2011 JEWELRY SELLING MANAGER SEASONAL INCENTIVE PROGRAM – PLAN DOCUMENT

**Objective:**
The role of the Jewelry Selling Manager differs from the role of the other Selling Managers in the store. The Jewelry Selling Managers have significant input into the selection and control of their inventory, as well as greater control over the pricing of their sales. Therefore, the Jewelry Selling Managers Incentive Program was developed to drive sales and markdown rate performance.

**Eligibility:**
All Jewelry Selling Managers managing only Jewelry will be included in the program. Selling Managers managing multiple merchandise areas are eligible for the selling manager bonus plan.

**Performance Metrics:**
- Sales plan - for all groups managed by the Selling Manager (some combination of 13/18/55, dependant on what exists in each store). Sales Plan goal is the seasonal stretch goal.
- Markdown Rate - targets are based on POS rates, not on full markdown rate, for all areas under the Selling Managers control.
- People Sales – Rollup of people sales plan for team managed

**Minimum Performance Requirement for Payout:**
In order to achieve any bonus payout under the Jewelry Selling Manager Seasonal Bonus Plan the Jewelry Manager must meet at least 70% seasonal stretch sales goal and 70% of their people sales plan.

**Bonus Payout Opportunity:**

| Markdown Achievement | Merchandise Sales - Plan | Merchandise Sales - Over Plan |
|---|---|---|
| Achieve less than 90% of Target Markdown | 1.50% | 2.00% |
| Achieve between 90% - 125% Target Markdown Rate | 1.00% | 1.50% |
| Achieve greater than 125% of Target Markdown Rate | 0.00% | 0.00% |

**Sales Modifier:**

- If 70% of merchandise sales plan is achieved, 25% of payout is earned
- If 80% of merchandise sales plan is achieved, 50% of payout is earned
- If 90% of merchandise sales plan is achieved, 75% of payout is earned
- If 100% or greater of merchandise sales plan is achieved, 100% of payout is earned

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**Calculation Examples:**

Examples at 90% of Merchandise Sales Plan

| Targets/Achievement Data | |
|---|---|
| Seasonal Merchandise Sales Plan | $1,000,000 |
| Actual Merchandise Sales | $900,000 |
| Achievement Level | 90% |
| Target Markdown Rate | 18% |
| People Sales Plan Achievement | 95% |

| Bonus Calculation Examples | Merchandise Sales Plan | Merchandise Sales Modifier | Total Payout |
|---|---|---|---|
| Markdown Rate Achievement = 16% (89% of Target) | $13,500 | 75% | $10,125 |
| Calculation | (900,000*1.5%) | | ($13,500 * 75%) |
| Markdown Rate Achievement = 19% (106% of Target) | $9,000 | 75% | $6,750 |
| Calculation | (900,000*1.0%) | | ($4,500 * 75%) |
| Markdown Rate Achievement = 23% (128% of Target) | $0 | 0% | $0 |

Examples exceeding Merchandise Sales Plan

| Targets/Achievement Data | |
|---|---|
| Seasonal Merchandise Sales Plan | $1,000,000 |
| Actual Merchandise Sales | $350,000 |
| Target Markdown Rate | 18% |
| People Sales Plan Achievement | 95% |

| Bonus Calculation Examples | Merchandise Sales Plan | Merchandise Sales Over Plan | Total Payout |
|---|---|---|---|
| Markdown Rate Achievement = 16% (89% of Target) | $15,000 | $7,000 | $22,000 |
| Calculation | (1,000,000*1.5%) | ($350,000*2.0%) | ($15,000+$7,000) |
| Markdown Rate Achievement = 19% (106% of Target) | $10,000 | $5,250 | $15,250 |
| Calculation | (1,000,000*1.0%) | ($350,000*1.5%) | ($10,000+$5,250) |
| Markdown Rate Achievement = 23% (128% of Target) | $0 | $0 | $0 |

**Payout Administration:**
- Bonuses will be paid out after the close of the season.
- All plan participants must be employed and in good standing ("At Target" or above rating on their review) with Saks Fifth Avenue on the date of the bonus payment to receive their award.
- If a plan participant leaves Saks Fifth Avenue prior to payment of any potential award, that award is forfeited.
- A Jewelry Selling Manager who has been hired after a new season begins may be eligible for a prorated award based on the entire seasonal performance (not monthly performance). The same pro-ration guidelines are used for transfers based on store performance.
- Saks Fifth Avenue reserves the right to change or amend bonus programs as business needs dictate. The company will make every effort to provide as much notice as possible when such occasions arise.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

# Saks Fifth Avenue

# Selling Manager Incentive Plan
# Fiscal Year 2012



Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

## INTRODUCTION

We are pleased to present Saks Fifth Avenue's 2012 Selling Manager Incentive Compensation Plan. The plan is effective for Fiscal Year 2012 ("Plan Period"). The plan supports our focus on achieving sales targets for Saks Fifth Avenue Full Line Stores. Here are some of the highlights of the plan:

- The incentive target is set at <u>10%</u> of Selling Manager ("Participant") salary annually.

- There is one plan component, People Sales, weighted at 100%.

- The People Sales Plan is set and measured on a seasonal basis.

- Incentive payments are earned once **80%** of the seasonal people sales plan is met.

- There is opportunity to overachieve - earning potential is uncapped.

Please read this brochure carefully—important aspects of the plan are detailed within.


## PLAN OBJECTIVES

The purpose of the FY2012 Incentive Plan is to reward participants for reaching financial objectives and to ensure that Saks Fifth Avenue meets or exceeds its overall sales plans. The objectives of the plan are as follows:

- To maximize Saks Fifth Avenue sales.

- To reward for people sales achievement.

- To motivate Selling Managers to coach their teams to foster great customer relationships that enhance Saks Fifth Avenue's overall sales.

- To ensure compensation is competitive to retail industry standards.

- To provide high earning potential.

- To attract, reward, and retain highly qualified and motivated Selling Managers.

- To link compensation to sales performance and to the execution of the Full Line Store sales strategy.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

# Selling Manager
# Incentive Compensation Plan FY 2012

**TOTAL
COMPENSATION
OVERVIEW**



Compensation for day-
to-day job performance
and the skills/behaviors
used to perform a job

Reward for achieving
specified sales plans

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

# Selling Manager
## Incentive Compensation Plan FY 2012

**DEFINITIONS**

- People Sales is defined as all net sales of applicable merchandise to customers for a Selling Manager's direct reports.

- "Applicable Merchandise" is defined as all merchandise available for sale as determined by the President / CMO of Saks Fifth Avenue.

- "Overachievement" is defined as performance above 100% of the seasonal people sales goal for Incentive plan purposes only.

- The "People Sales Plan" is the people sales target for the specific team assigned to a Selling Manager.

- The Sales Incentive Steering Committee shall be comprised of the Chief Financial Officer, The Executive Vice President of Human Resources and the President / CMO.

**INCENTIVE PLAN
DESIGN**

- The target payout is 10% of annual salary upon reaching 100% of the People Sales Plan.

- All generated people sales in the Plan Period are credited toward the People Sales Plan.

- All returns generated in the Plan Period are credited against the People Sales Plan.

- The People Sales Plan is set, and may be adjusted at any time by the EVP / Stores or his/her designee.

- The People Sales Plan is communicated via the "FY 2012 Plan Assignment Sheet".

- Split sales between Participants, if any, will only be credited 50%/50% between two Participants and/or teams unless otherwise determined by the EVP / Stores or his/her designee and approved by Store Operations.  Any sales splits, in total, will not exceed 100%.

- Achievement is calculated on a seasonal basis over the plan year.

- Payments are based on seasonal achievement.  5% target for each season.

- A full review of the payout schedule above the 80% threshold is displayed on the following page.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

# Selling Manager
# Incentive Compensation Plan FY 2012

## PAYOUT SCHEDULE

| Achievement vs. People Sales Seasonal Plan | Payout % | Payout as a % of Annual Salary | Achievement vs. People Sales Seasonal Plan | Payout % | Payout as a % of Annual Salary |
|---|---|---|---|---|---|
| 200% | 400.0% | 20.00% | 200% | 400.0% | 20.00% |
| 195% | 385.0% | 19.25% | 195% | 385.0% | 19.25% |
| 190% | 370.0% | 18.50% | 190% | 370.0% | 18.50% |
| 185% | 355.0% | 17.75% | 185% | 355.0% | 17.75% |
| 180% | 340.0% | 17.00% | 180% | 340.0% | 17.00% |
| 175% | 325.0% | 16.25% | 175% | 325.0% | 16.25% |
| 170% | 310.0% | 15.50% | 170% | 310.0% | 15.50% |
| 165% | 295.0% | 14.75% | 165% | 295.0% | 14.75% |
| 160% | 280.0% | 14.00% | 160% | 280.0% | 14.00% |
| 155% | 265.0% | 13.25% | 155% | 265.0% | 13.25% |
| 150% | 250.0% | 12.50% | 150% | 250.0% | 12.50% |
| 145% | 235.0% | 11.75% | 145% | 235.0% | 11.75% |
| 140% | 220.0% | 11.00% | 140% | 220.0% | 11.00% |
| 135% | 205.0% | 10.25% | 135% | 205.0% | 10.25% |
| 130% | 190.0% | 9.50% | 130% | 190.0% | 9.50% |
| 125% | 175.0% | 8.75% | 125% | 175.0% | 8.75% |
| 120% | 160.0% | 8.00% | 120% | 160.0% | 8.00% |
| 115% | 145.0% | 7.25% | 115% | 145.0% | 7.25% |
| 110% | 130.0% | 6.50% | 110% | 130.0% | 6.50% |
| 105% | 115.0% | 5.75% | 105% | 115.0% | 5.75% |
| 95% | 75.0% | 3.75% | 95% | 75.0% | 3.75% |
| 90% | 50.0% | 2.5% | 90% | 50.0% | 2.5% |
| 85% | 37.5% | 1.875% | 85% | 37.5% | 1.875% |
| < 80% | No Payout | No Payout | < 80% | No Payout | No Payout |

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

## Plan Illustration

**EXAMPLE:  (All people sales numbers and salaries are fictitious and are for example purposes only)**

- Participant's annual base salary is $50,000
- The Participant is assigned a people sales plan of:
    - 2,000,000 for the spring season
    - 3,000,000 for the fall season
- The Participant achieves people sales of:
    - 2,500,000 for the spring season
    - 2,700,000 for the fall season

➢ **Spring**

In Spring, the Participant generates $2,500,000 in people sales, which equals 125% of plan

- Based on the payout schedule, this equates to an 8.75% of base salary incentive payout
- $50,000 *8.75% equals an incentive payout of $4,375

➢ **Fall**

At the conclusion of the Fall Season, the Participant generates $2,500,000 in people sales, which equals 90% of plan

- Based on payout schedule, this equates to a 2.5% of base salary incentive payout
- $50,000 * 2.5% equals an incentive payout of $1,250

Total Annual Incentive Earnings: $4,375 + $1,250 = $5,625 (11.25% of annual salary)

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

## Administrative Guidelines

**GENERAL
PROVISIONS**

The Chairman / CEO and/or President / CMO establishes the parameters and goals for the Selling Manager Incentive Plan ("Plan").  Store Operations is responsible for tracking people sales generated.  Human Resources and Store Management are responsible for overall administration of the Plan.  Within Human Resources, Compensation is responsible for calculating and verifying incentive payouts, and gaining approval for the final incentive payout.

The Chairman / CEO and/or President / CMO shall approve any changes and exceptions to the policies and procedures set forth in the Plan.

The Plan supersedes any previous written or oral Selling Manager incentive plans and is effective for Fiscal Year 2012.

Saks Fifth Avenue reserves the right to amend, restate, or terminate this plan or any of its provisions at any time at Saks' sole discretion.

Employment with Saks Fifth Avenue is at-will and as such, nothing in the Plan is intended to create a contract for employment or guarantee of continued employment with the Company.  The Company reserves the right to change the terms and conditions of your employment at any time for any reason not prohibited by law, with or without notice to you.

**PAYOUT TIMING**

Incentive pay under the Plan is paid seasonally.  Best efforts are made to pay the incentive approximately 60 days after the Season ends and 75 days after year-end, less deduction for taxes and other appropriate withholding.  Plan participants hereby authorize Saks Fifth Avenue to deduct any monies owed to Saks Fifth Avenue from incentive payments prior to payout.

**ELIGIBILITY**

Eligibility for participation in the Selling Manager incentive plan is at the discretion of the President / CMO or his/her designee.   Eligibility is limited to employees who have signed and returned the attached Acknowledgment Form to Human Resources.

As a condition precedent to payment and in order to be eligible for a season payout, an Associate must be actively employed on the date of payout.

**PEOPLE SALES PLANS**

All People Sales plans are set by the President / CMO or his/her designee, and may be adjusted at any time at his/her discretion.

Participants do not receive payment if signed FY 2012 Plan Assignment Sheets are not submitted to Human Resources.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

## Administrative Guidelines

**PROMOTIONS /
DEPARTMENT
TRANSFERS**

If the Participant is promoted or transferred out of the Selling Manager position, he/she will receive an incentive payout reflecting his/her performance prorated for the length of time he/she served in that position when the People Sales is calculated by Store Operations, if the Participant is still employed by Saks at the time of payout.

Participants transferring departments will have a new people sales plan assigned to them beginning on the first day of the month of transfer.  Participants' plans are adjusted if department is changed or added.  Any exceptions are made at the discretion of the President / CMO.

New Goal Assignment Sheets are assigned when People Sales goals are adjusted.

**NEW HIRES**

Incentive payments for all eligible plan Participants are pro-rated according to start date.

**TERMINATION /
DEATH**

If an Associate's employment is terminated voluntarily or termed for cause for any reason during the fiscal year, the Associate will not be eligible to receive a bonus award.  To receive any bonus award earned, an Associate must be actively employed by a Division of Saks Incorporated on the date bonus payments are made.  Payments are made at the same time as those made to all other plan participants.

**LEAVE OF ABSENCE**

If a Participant takes an approved leave of absence, the EVP / Stores reserves the right to modify or prorate the Participant's People Sales Plan during the period of time the Participant is on a leave of absence.  Target seasonal incentives for Participants that take an approved leave of absence are prorated to reflect the time actively employed in the Plan Period.  Payments are held until the Selling Manager returns from Leave of Absence.

**OVERPAYMENT**

In the unlikely event of an error that results in overpayment, the Participant must repay any incentive overpayment.  Participants authorize Saks Fifth Avenue to recover any outstanding incentive overpayments from incentive payments or other monies owed by Saks Fifth Avenue including base salary, vacation accrual, etc. as required to recover the deficit unless state or local law requires otherwise.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

# Incentive Compensation Plan FY 2012

## Selling Manager
## Acknowledgment Form

I acknowledge that I have received, reviewed, and agreed to the terms and provisions of the Incentive Compensation Plan, including the Administrative Guidelines of the Incentive Compensation Plan.  I understand that this Incentive Compensation Plan is not intended to create a guarantee or contract for employment between Saks Fifth Avenue and me.  I further understand that the provisions and payouts of the Incentive Compensation Plan may be modified, amended, withdrawn, or otherwise changed by Saks Fifth Avenue at any time.

_____

Signature

_____

Printed Name

_____

Date

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

# Incentive Compensation Plan FY 2012

## Selling Manager
## FY 2012 Plan Assignment Sheet  - Spring Season

I acknowledge that I have received, reviewed, and agreed to the 2012 Spring Seasonal People Sales Plan.  I understand that the People Sales Plan may be modified or otherwise changed by Saks Fifth Avenue at any time.

**Spring Season People Sales Plan**

_____

Signature

_____

Printed Name

_____

Date

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

# Incentive Compensation Plan FY 2012

## Selling Manager
## FY 2012 Plan Assignment Sheet  - Fall Season

I acknowledge that I have received, reviewed, and agreed to the 2012 Fall Seasonal People Sales Plan.  I understand that the People Sales Plan may be modified or otherwise changed by Saks Fifth Avenue at any time.


**Fall Season People Sales Plan**



_____

Signature


_____

Printed Name


_____

Date

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**Seasonal Incentive Compensation Plan FY 2012**

**Jewelry Selling Manager**
**FY 2012 Plan Assignment Sheet - Spring Season**

I acknowledge that I have received, reviewed, and agreed to the 2012 Spring Merchandise Stretch Sales, Markdown Rate and People Sales Plans.  I understand that the Plans may be modified or otherwise changed by Saks Fifth Avenue at any time.

|  |  |
|---|---|
| **Spring Season Merchandise Stretch Sales Plan** |  |
| **Spring Season Markdown Rate Plan** |  |
| **Spring Season People Sales Plan** |  |

Signature

Printed Name

Date

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**Seasonal Incentive Compensation Plan FY 2012**

**Jewelry Selling Manager**
**Acknowledgment Form**

I acknowledge that I have received, reviewed, and agreed to the terms and provisions of the Jewelry Selling Manager Seasonal Incentive Plan, including the Administrative Guidelines of the Incentive Compensation Plan.   I understand that this Incentive Compensation Plan is not intended to create a guarantee or contract for employment between Saks Fifth Avenue and me. I further understand that the provisions and payouts of the Incentive Compensation Plan may be modified, amended, withdrawn, or otherwise changed by Saks Fifth Avenue at any time.

_____

Signature

_____

Printed Name

_____

Date

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

- SM Bonus – General (Target = 5% of Salary each season)
  - SM's bonus is based on how well they perform against their Seasonal People Sales Plan
  - There is no cap on how much of a bonus a SM can make

- SM Bonus – Cosmetics (Target = 5% of Salary each season)
  - This plan is similar to the General bonus program….except it has a mdse modifier
  - In order to get their full bonus, the Cosmetic SM must achieve their Mdse Stretch Plan
  - Step 1 – we determine the bonus amount based on how the SM performed against their Seasonal People Sales Plan (just like the General SM Bonus)
  - Step 2 – we determine the MODIFIER by measuring the SM's performance against their MDSE Stretch Plan.  That will modify the overall bonus.
  - **SAMPLE:**
  - People Sales = 100% to plan = $4,000 bonus
  - MDSE Sales = 90% to plan = 75% Modifier
  - Final Bonus Amount = $4,000 (x) 75% = $3,000

- SM Bonus – Jewelry (Target = 0.5% commission) **Revised for 2013**
  - The Bonus Plan applies to SMs who only have Jewelry responsibilities.  SMs who have split responsibilities of Jewelry + other areas will be on the "General" SM Bonus
  - This plan has 2 individual categories – People Sales & MDSE Sales (each category pays out individually)
  - **Price of entry** - In order to be "eligible" for payout in the People Sales category, the SM must achieve at least 80% (this may change) of their People Sales Plan
  - **Price of entry** - In order to be "eligible" for payout in the Mdse Sales category, the SM must achieve at least 80% (this may change) of their Stretch Mdse Plan
  - Payout on this plan is a commission on either/both People Sales & Mdse Sales…..it is not a % of salary like the other 2 plans

**Non – NY Store:**

| People Sales | People Sales up to Plan | People Sales Over Plan |
|---|---|---|
| People Sales Rate | 0.50% commission on total People Sales | 0.75% commission on amount of People Sales over plan |

| Merchandise Sales | Merch Sales up to Plan | Merch Sales Over Plan |
|---|---|---|
| Merchandise Sales Rate | 0.50% commission on total Merch Sales | 0.75% commission on amount of Merch Sales over plan |

**NY Store:**

| People Sales | People Sales up to Plan | People Sales Over Plan |
|---|---|---|
| People Sales Rate | 0.25% commission on total People Sales | 0.375% commission on amount of People Sales over plan |

| Merchandise Sales | Merch Sales up to Plan | Merch Sales Over Plan |
|---|---|---|
| Merchandise Sales Rate | 0.25% commission on total Merch Sales | 0.375% commission on amount of Merch Sales over plan |

**SAMPLE:**
**SM Performance Data:**

| Merch Sales = $5,000,000 | % to Plan = 95% |
|---|---|
| People Sales = $4,000,000 | % to Plan = 92% |

*SEE OVER*

**Category 1 – People Sales**

| Price of entry | Bonus Calculation (People Sales x Commission) | Seasonal Bonus Payout |
|---|---|---|
| 80% of people sales plan | $4,000,000 x 0.5% | $20,000 |

**Category 2 – Merchandise Sales**

| Price of entry | Bonus Calculation (Merch Sales x Commission) | Seasonal Bonus Payout |
|---|---|---|
| 80% of Merch stretch plan | $5,000,000 x 0.5% | $25,000 |

**Total Bonus = $55,000**

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM



## 2012 JEWELRY SELLING MANAGER SEASONAL INCENTIVE PROGRAM – PLAN DOCUMENT

**Objective:**
The role of the Jewelry Selling Manager differs from the role of the other Selling Managers in the store. The Jewelry Selling Managers have significant input into the selection and control of their inventory, as well as greater control over the pricing of their sales. Therefore, the Jewelry Selling Managers Incentive Program was developed to drive sales and markdown rate performance.

**Eligibility:**
All Jewelry Selling Managers managing <u>only</u> Jewelry will be included in the program.  Selling Managers managing multiple merchandise areas are eligible for the selling manager bonus plan.

**Performance Metrics:**
- Sales plan - for all groups managed by the Selling Manager (some combination of 13/18/55, dependant on what exists in each store).  Sales Plan goal is the seasonal stretch plan.
- Markdown Rate - targets are based on POS rates, not on full markdown rate, for all areas under the Selling Manager's control.
- People Sales – Rollup of people sales plan for team managed

**Minimum Performance Requirement for Payout:**
In order to achieve any bonus payout under the Jewelry Selling Manager Seasonal Bonus Plan the Jewelry Manager must meet at least:
- 80% seasonal stretch sales <u>and</u>
- 80% of their people sales plan.

**Bonus Payout Opportunity:**

| Markdown Achievement | Merchandise Sales - Plan | Merchandise Sales - Over Plan |
|---|---|---|
| Achieve less than 90% of Target Markdown | 1.50% | 2.00% |
| Achieve between 90% - 125% Target Markdown Rate | 1.00% | 1.50% |
| Achieve greater than 125% of Target Markdown Rate | 0.00% | 0.00% |

**Sales Modifier:**

- If 80% of merchandise sales plan is achieved, 50% of payout is earned
- If 90% of merchandise sales plan is achieved, 75% of payout is earned
- If 100% or greater of merchandise sales plan is achieved, 100% of payout is earned

Electronically Filed - St. Louis County - January 11, 2021 - 02:42 PM

## Calculation Examples:

### Examples at 90% of Merchandise Stretch Sales Plan

| Targets/Achievement Data | |
| --- | --- |
| Seasonal Merchandise Stretch Sales Plan | $1,000,000 |
| Actual Merchandise Sales | $900,000 |
| Achievement Level | 90% |
| Target Markdown Rate | 18% |
| People Sales Plan Achievement | 95% |

| Bonus Calculation Examples | Merchandise Sales Plan | Merchandise Sales Modifier | Total Payout |
| --- | --- | --- | --- |
| Markdown Rate Achievement = 16% (89% of Target) | $13,500 | 75% | $10,125 |
| Calculation | (900,000*1.5%) | | ($13,500 * 75%) |
| Markdown Rate Achievement = 19% (106% of Target) | $9,000 | 75% | $6,750 |
| Calculation | (900,000*1.0%) | | ($4,500 * 75%) |
| Markdown Rate Achievement = 23% (128% of Target) | $0 | 0% | $0 |

### Examples exceeding Merchandise Strectch Sales Plan

| Targets/Achievement Data | |
| --- | --- |
| Seasonal Merchandise Stretch Sales Plan | $1,000,000 |
| Actual Merchandise Sales | $350,000 |
| Target Markdown Rate | 18% |
| People Sales Plan Achievement | 95% |

| Bonus Calculation Examples | Merchandise Sales Plan | Merchandise Sales Over Plan | Total Payout |
| --- | --- | --- | --- |
| Markdown Rate Achievement = 16% (89% of Target) | $15,000 | $7,000 | $22,000 |
| Calculation | (1,000,000*1.5%) | ($350,000*2.0%) | ($15,000+$7,000) |
| Markdown Rate Achievement = 19% (106% of Target) | $10,000 | $5,250 | $15,250 |
| Calculation | (1,000,000*1.0%) | ($350,000*1.5%) | ($10,000+5,250) |
| Markdown Rate Achievement = 23% (128% of Target) | $0 | $0 | $0 |

## Payout Administration:
- Bonuses will be paid out after the close of the season.
- All plan participants must be employed and in good standing ("At Target" or above rating on their review) with Saks Fifth Avenue on the date of the bonus payment to receive their award.
- If a plan participant leaves Saks Fifth Avenue prior to payment of any potential award, that award is forfeited.
- A Jewelry Selling Manager who has been hired after a new season begins may be eligible for a prorated award based on the entire seasonal performance (not monthly performance).  The same pro-ration guidelines are used for transfers based on store performance.
- Saks Fifth Avenue reserves the right to change or amend bonus programs as business needs dictate. The company will make every effort to provide as much notice as possible when such occasions arise.

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM



## 2013 JEWELRY SELLING MANAGER SEASONAL INCENTIVE PROGRAM – PLAN DOCUMENT

**Objective:**
The role of the Jewelry Selling Manager differs from the role of the other Selling Managers in the store. The Jewelry Selling Managers have significant input into the selection and control of their inventory, as well as greater control over the pricing of their sales.

**Eligibility:**
All Jewelry Selling Managers managing only Jewelry will be included in the program.  Selling Managers managing multiple merchandise areas are eligible for the selling manager bonus plan.

**Performance Metrics:**
- Sales plan - for all groups managed by the Selling Manager (some combination of 13/18/55, dependant on what exists in each store).  Sales Plan goal is the seasonal stretch plan.
- People Sales – Rollup of people sales plan for team managed

**Minimum Performance Requirement for Payout:**
In order to achieve any bonus payout under the Jewelry Selling Manager Seasonal Bonus Plan the Jewelry Manager must meet at least:
- 80% seasonal stretch sales and
- 80% of their people sales plan
- Each component pays out separately as long as a minimum of 80% threshold has been met.

**Bonus Payout Opportunity:**

| People Sales | People Sales up to Plan | People Sales - Over Plan |
|---|---|---|
| People Sales Payout | 0.50% | 0.75% |

| Merchandise Sales | Merch Sales up to Plan | Merch Sales - Over Plan |
|---|---|---|
| Merchandise Sales Payout | 0.50% | 0.75% |

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**Calculation Examples:**

Examples at 90% of Sales Plan

| Targets/Achievement Data | |
|---|---|
| Seasonal Merchandise Stretch Sales Plan | $1,000,000 |
| Actual Merchandise Sales | $900,000 |
| Achievement Level | 90% |
| | |
| People Sales Plan | $2,000,000 |
| Actual People Sales | $1,900,000 |
| Achievement Level | 95% |

Bonus Calculation Example

| Bonus Calculation Examples | Actual Sales Payout |
|---|---|
| **Merchandise Actual Sales = $900,000** | $4,500 |
| Calculation | ($900,000*0.5%) |
| **People Sales Actual = $1,900,000** | $9,500 |
| Calculation | ($1,900,000*0.5%) |
| | |

Examples exceeding Sales Plan

| Targets/Achievement Data | |
|---|---|
| Seasonal Merchandise Stretch Sales Plan | $1,000,000 |
| Actual Merchandise Sales | $1,100,000 |
| Sales Over Plan | $100,000 |
| People Sales Plan Achievement | 110% |
| Seasonal Merchandise Stretch Sales Plan | $2,000,000 |
| Actual Merchandise Sales | $2,100,000 |
| Sales Over Plan | $100,000 |
| People Sales Plan Achievement | 105% |

Bonus Calculation Example

| Bonus Calculation Examples | Actual Sales Payout | Sales Over Plan Payout | Total Payout |
|---|---|---|---|
| **Merchandise Actual Sales = $1,100,000** | $5,500 | $750 | $6,250 |
| Calculation | (1,100,000*0.5%) | ($100,000*.75%) | ($5,500+$750) |
| **Actual People Sales = $2,100,000** | $10,500 | $750 | $11,250 |
| Calculation | (2,100,000*0.5%) | ($100,000*.75%) | ($10,500+$750) |
| | | | |

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**Payout Administration:**
- Bonuses will be paid out after the close of the season.
- All plan participants must be employed and in good standing ("At Target" or above rating on their review) with Saks Fifth Avenue on the date of the bonus payment to receive their award.
- If a plan participant leaves Saks Fifth Avenue prior to payment of any potential award, that award is forfeited.
- A Jewelry Selling Manager who has been hired after a new season begins may be eligible for a prorated award based on the entire seasonal performance (not monthly performance).  The same pro-ration guidelines are used for transfers based on store performance.
- Saks Fifth Avenue reserves the right to change or amend bonus programs as business needs dictate. The company will make every effort to provide as much notice as possible when such occasions arise.

2,124,000 - $10,000 + $930
2,018,000 -    10,090
                         930
             $21,020
                 620
         $21,640

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**Seasonal Incentive Compensation Plan FY 2013**

**Jewelry Selling Manager**
**Acknowledgment Form**

I acknowledge that I have received, reviewed, and agreed to the terms and provisions of the Jewelry Selling Manager Seasonal Incentive Plan, including the Administrative Guidelines of the Incentive Compensation Plan.  I understand that this Incentive Compensation Plan is not intended to create a guarantee or contract for employment between Saks Fifth Avenue and me. I further understand that the provisions and payouts of the Incentive Compensation Plan may be modified, amended, withdrawn, or otherwise changed by Saks Fifth Avenue at any time.

_____
Signature

_____
Printed Name

_____
Date

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**Seasonal Incentive Compensation Plan FY 2013**

**Jewelry Selling Manager**
**FY 2013 Plan Assignment Sheet - Spring Season**

I acknowledge that I have received, reviewed, and agreed to the 2013 Spring Merchandise Stretch Sales and People Sales Plans.  I understand that the Plans may be modified or otherwise changed by Saks Fifth Avenue at any time.

| Measure | Plan |
|---|---|
| Spring Season Merchandise Stretch Sales Plan | |
| Spring Season People Sales Plan | |


_____
Signature

_____
Printed Name

_____
Date

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**Seasonal Incentive Compensation Plan FY 2013**

**Jewelry Selling Manager**
**FY 2013 Plan Assignment Sheet - Fall Season**

I acknowledge that I have received, reviewed, and agreed to the 2013 Fall Merchandise Stretch Sales and People Sales Plans.  I understand that the Plans may be modified or otherwise changed by Saks Fifth Avenue at any time.

| Measure | Plan |
|---|---|
| **Fall Season Merchandise Stretch Sales Plan** | |
| **Fall Season People Sales Plan** | |


_____
Signature

_____
Printed Name

_____
Date

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**Saks Fifth Avenue - Merchandise Planning**
**Jewelry Spring 2013 Stretch Sales**

| STORE | Sales |
|---|---|
| S039-ST. LOUIS | 2,029,000 |

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM



## 2015 JEWELRY SELLING MANAGER SEASONAL INCENTIVE PROGRAM – PLAN DOCUMENT

**Objective:**
The role of the Jewelry Selling Manager differs from the role of the other Selling Managers in the store. The Jewelry Selling Managers have significant input into the selection and control of their inventory, as well as greater control over the pricing of their sales.

**Eligibility:**
All Jewelry Selling Managers managing <u>only</u> Jewelry will be included in the program.  Selling Managers managing multiple merchandise areas are eligible for the selling manager bonus plan.

**Performance Metrics:**
- Sales plan - for all groups managed by the Selling Manager (some combination of 13/18/55, dependant on what exists in each store).  Sales Plan goal is the seasonal stretch plan.
- People Sales – Rollup of people sales plan for team managed

**Minimum Performance Requirement for Payout:**
In order to achieve any bonus payout under the Jewelry Selling Manager Seasonal Bonus Plan the Jewelry Manager must meet at least:
- 80% seasonal stretch sales <u>or</u>
- 80% of their people sales plan
- Each component pays out separately as long as a minimum of 80% threshold has been met.

**Bonus Payout Opportunity:**

| People Sales | People Sales up to Plan | People Sales - Over Plan |
|---|---|---|
| People Sales Payout | 0.50% | 0.75% |

| Merchandise Sales | Merch Sales up to Plan | Merch Sales - Over Plan |
|---|---|---|
| Merchandise Sales Payout | 0.50% | 0.75% |

Electronically Filed - St. Louis County - January 11, 2021 - 02:42 PM

**Calculation Examples:**

Examples at 90% of Sales Plan

| Targets/Achievement Data | |
|---|---|
| Seasonal Merchandise Stretch Sales Plan | $1,000,000 |
| Actual Merchandise Sales | $900,000 |
| Achievement Level | 90% |
| | |
| People Sales Plan | $2,000,000 |
| Actual People Sales | $1,900,000 |
| Achievement Level | 95% |

Bonus Calculation Example

| Bonus Calculation Examples | Actual Sales Payout |
|---|---|
| **Merchandise Actual Sales = $900,000** | $4,500 |
| Calculation | ($900,000*0.5%) |
| **People Sales Actual = $1,900,000** | $9,500 |
| Calculation | ($1,900,000*0.5%) |
| | |

Examples exceeding Sales Plan

| Targets/Achievement Data | |
|---|---|
| Seasonal Merchandise Stretch Sales Plan | $1,000,000 |
| Actual Merchandise Sales | $1,100,000 |
| Sales Over Plan | $100,000 |
| Merchandise Sales Plan Achievement | 110% |
| | |
| Seasonal People Sales Plan | $2,000,000 |
| Actual People Sales | $2,100,000 |
| Sales Over Plan | $100,000 |
| People Sales Plan Achievement | 105% |

Bonus Calculation Example

| Bonus Calculation Examples | Actual Sales Payout | Sales Over Plan Payout | Total Payout |
|---|---|---|---|
| **Merchandise Actual Sales = $1,100,000** | $5,000 | $750 | $5,750 |
| Calculation | (1,000,000*0.5%) | ($100,000*.75%) | ($5,000+$750) |
| **Actual People Sales = $2,100,000** | $10,500 | $750 | $10,750 |
| Calculation | (2,000,000*0.5%) | ($100,000*.75%) | ($10,000+$750) |

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**Seasonal Incentive Compensation Plan FY 2015**

**Jewelry Selling Manager**
**Acknowledgment Form**

I acknowledge that I have received, reviewed, and agreed to the terms and provisions of the Jewelry Selling Manager Seasonal Incentive Plan, including the Administrative Guidelines of the Incentive Compensation Plan.  I understand that this Incentive Compensation Plan is not intended to create a guarantee or contract for employment between Saks Fifth Avenue and me. I further understand that the provisions and payouts of the Incentive Compensation Plan may be modified, amended, withdrawn, or otherwise changed by Saks Fifth Avenue at any time.

_____
Signature

_____
Printed Name

_____
Date

Electronically Filed - St Louis County - January 11, 2021 - 02:42 PM

**Payout Administration:**

- Bonuses will be paid out after the close of the season.
- All plan participants must be employed and in good standing ("At Target" or above rating on their review) with Saks Fifth Avenue on the date of the bonus payment to receive their award.
- If a plan participant leaves Saks Fifth Avenue prior to payment of any potential award, that award is forfeited.
- A Jewelry Selling Manager who has been hired after a new season begins may be eligible for a prorated award based on the entire seasonal performance (not monthly performance).  The same pro-ration guidelines are used for transfers based on store performance.
- Saks Fifth Avenue reserves the right to change or amend bonus programs as business needs dictate. The company will make every effort to provide as much notice as possible when such occasions arise.